IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL LESHER | : | |
| Plaintiff, | : | CIVIL ACTION No:_____ |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF DAUPHIN; | : | |
| PRIMECARE MEDICAL; JANE DOE | : | JURY TRIAL DEMANDED |
| NURSE 1; JANE DOE NURSE 2; | : | |
| JOHN DOE CORRECTIONS | : | ELECTRONICALLY FILED |
| OFFICER 1; and JOHN DOE | : | |
| CORRECTIONS OFFICER 2 | : | |
| Defendants. | : | |

## COMPLAINT

**AND NOW** come the Plaintiff Joel Lesher by and through counsel, the Law Firm of Killian & Gephart, LLP, and respectfully submit the following:

### JURISDICTION AND VENUE

1. Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. 1331 and 1324. This action arises under the provisions of 42 U.S.C. § 1983.

2. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 in that the events complained of herein occurred in Dauphin County, Pennsylvania, and the above-captioned entities and individuals reside or have places of business within the boundaries of the Middle District of Pennsylvania.

### PARTIES

3. Plaintiff Joel Lesher ("Plaintiff") is an adult individual presently

residing at 125 Barrick Drive, Duncannon, PA 17020.

4. Plaintiff was, at all times relevant to the asserted causes of action, a detainee incarcerated at Dauphin County Prison ("DCP").

5. Defendant, PrimeCare Medical, Inc. ("PrimeCare") is a for profit corporation with a principal place of business at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109. PrimeCare is a medical services provider that has a contract with Dauphin County to provide medical services to inmates and detainees at DCP. At all times relevant to the asserted causes of action, PrimeCare engaged in regular business within the Commonwealth of Pennsylvania and Dauphin County and was the provider of medical treatment to inmates housed at DCP.

6. Defendant, County of Dauphin ("Dauphin County"), is a municipal government entity and/or public corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania and maintains a business address of 2 South 2nd Street, Harrisburg, Pennsylvania, 17101. At all times relevant hereto, Defendant County of Dauphin owned, operated, managed, directed and controlled DCP.

7. Defendants Jane Doe Nurse 1 and Jane Doe Nurse 2 are employees of PrimeCare and are licensed professionals who are/were employed by PrimeCare to provide medical services to inmates at DCP. Defendants Jane Doe Nurses provided direct medical care and/or evaluations to Plaintiff. Plaintiff is asserting a

professional liability claim against these Defendants.

8. Defendants John Doe Corrections Officer 1 and John Doe Corrections Officer 2 are/were employees of Dauphin County serving as corrections officers. Defendants John Doe Corrections Officer 1 and John Doe Corrections Officer 2 were at all times relevant responsible for the care and supervision of Plaintiff.

9. As to the causes of actions below, all Defendants acted under the color of state law.

## STATEMENT OF FACTS

10. On or about August 31, 2019, Plaintiff was incarcerated in the Dauphin County Prison.

11. Bail was set at $25,000 cash.

12. Plaintiff was unable post bail and remained in pre-trial detention until the final disposition of his criminal charges.

13. At the time of the incidents referenced herein, Plaintiff was a pre-trial detainee.

14. Almost immediately upon entry into DCP, Plaintiff was assaulted by prison staff while handcuffed and shackled.

15. While in the intake area of the facility, Plaintiff mistakenly sat in one of the staff's chairs after being ordered to sit down.

16. Sergeant Lowe and two other corrections officers responded by

throwing Plaintiff on the ground and repeatedly striking him in head and body several times. The assault was captured on camera.

17. A report of the incident was made and pictures of Plaintiff's injuries were taken.

18. Plaintiff was given a disciplinary write-up and was placed in disciplinary housing. He remained in disciplinary housing for the remainder of his stay at DCP.

19. While in disciplinary housing, Plaintiff submitted several grievances regarding his treatment at DCP, including failure to provide him with the opportunity to bathe and failure to provide a minimum of time outside his cell.

20. At times, the prison staff refused to accept his grievances and labelled Plaintiff a problem inmate.

21. Plaintiff was moved to several different housing blocks at DCP.

22. Around November 2019, Plaintiff was moved to a notoriously violent and unsafe housing block.

23. Several gang members and violent felons were housed on the block, including inmates Julian Brown and Ewhnik Proctor.

24. Inmates Brown and Proctor used extortion to gain food from various inmates by threat of violence. Prison staff were aware of the conduct.

25. There were several threats made toward Plaintiff for refusing to provide

them with food. The prison staff was present while the threats were being made and the arguments that ensued.

26. On or about January 20, 2020, Plaintiff and other inmates gathered to be escorted from the recreation area back to their cells. Part of DCP's security protocols is to have the inmates placed in handcuffs while transported to and from recreation.

27. While in the gymnasium area, Inmates Brown and Proctor assaulted Plaintiff by spitting on him and yelling profanities at him.

28. Upon return to the block, Defendants John Doe Corrections Officers uncuffed Inmate Brown at the entrance of his cell, instead of while he was inside of the cell, as per DCP protocol.

29. Immediately upon being uncuffed, Inmate Brown rushed toward Plaintiff, who was handcuffed behind his back at the time, and struck Plaintiff several times in the face. Plaintiff fell to the ground, where Inmate Brown proceeded to choke Plaintiff before prison staff intervened.

30. DCP staff filed an incident report and pictures of Plaintiff's injuries were taken.

31. The next day, January 21, 2020, all inmates were uncuffed in the recreation area when Inmate Brown's associate, Ewhnik Proctor, lunged at Plaintiff and struck him in the face several times.

32. Defendants John Doe Corrections Officers were on-duty and responsible for security.

33. At one point, Inmate Proctor picked Plaintiff up and slammed him onto the concrete floor, shattering Plaintiff's elbow.

34. Plaintiff immediately informed Defendants John Doe Corrections Officers and other prison staff that he was severely injured and needed medical attention.

35. Defendants John Doe Corrections Officers responded by forcefully placing Plaintiff's hands behind his back to be cuffed. Because Plaintiff's arm was injured, Defendants cuffed his hands in front of him and dragged him back to his cell.

36. Plaintiff was screaming in unbearable and excruciating pain during this process.

37. Instead of taking Plaintiff to the medical block of DCP, Defendants John Doe Corrections Officers took him back to the disciplinary housing blocks.

38. While he was being transported, the Lieutenant on duty screamed at Plaintiff and told him that he hoped Plaintiff learned his lesson this time, that he was sick of Plaintiff making extra work for him, and that he was placing Plaintiff in protective custody.

39. Plaintiff continuously begged for medical attention.

40. Eventually, a Defendant Jane Doe Nurse arrived to inspect Plaintiff's injuries.

41. A Defendant Jane Doe Nurse commented that his arm was definitely "messed up".

42. Plaintiff asked to go to the hospital for his injuries. He was denied.

43. For most of the ensuing night, Plaintiff was writhing in pain. He begged any passing prison employee for medical help.

44. Plaintiff's pleas went ignored by Defendants John Doe Corrections Officers.

45. The following day, Plaintiff was brought out of his cell to see a different Defendant Jane Doe Nurse. She commented that while she could not make a diagnosis, it was clear to her that Plaintiff's arm was broken.

46. Plaintiff pleaded for pain medication to alleviate his suffering.

47. A Defendant Jane Doe Nurse responded by recommending he take Tylenol or Advil. Plaintiff asked to see a doctor. A Defendant Jane Doe Nurse commented she wasn't sure when she could get the prison doctor to look at Plaintiff's injury.

48. Plaintiff was returned to his cell, still in agony. He submitted a grievance indicating that he was not receiving medical treatment. He continued to ask any prison employee he could to get him help and get him to a hospital.

49. Once again, Plaintiff's pleas were ignored.

50. However, a corrections officer commented to a prison counselor that Plaintiff was not receiving any pain medication and he needed to get to a hospital.

51. Plaintiff was not seen by a prison doctor until on or about January 24, 2020, three full-days after he sustained the injury.

52. Shortly after seeing Plaintiff, the prison doctor had Plaintiff transported to the Hershey Medical Center Emergency Department.

53. Hershey Medical Center scheduled Plaintiff for surgery and he was returned to DCP with a sling prescribed to support and protect his arm from further damage prior to surgery.

54. DCP officials confiscated the sling from Plaintiff upon his arrival.

55. Plaintiff was never moved to the medical wing of DCP.

56. Instead, Plaintiff was placed in a cell with a bed that required him to utilize his inured arm to get in and out of.

57. On January 31, 2020, surgery was performed on Plaintiff's elbow.

58. Post operation, Plaintiff was prescribed physical and occupational therapy.

59. Plaintiff suffers from a loss of movement and permanent damage to his elbow. The lasting effects of the injury have prevented him from many types of employment.

60. The refusal and/or delay in providing treatment to Plaintiff was outrageous and extreme.

## CAUSES OF ACTION

### COUNT 1 – VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT: FAILURE TO PROTECT
### (Plaintiff v. County of Dauphin and John Doe Corrections Officers)

61. Plaintiff incorporates herein by reference the above numbered averments as if set forth at length herein.

62. Prison officials have a duty under the Eighth Amendment to the United States Constitution to protect prisoners under their care.

63. In this instance, Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.

64. Plaintiff was housed with inmates who had a history of violence. Prison officials and employees were aware of the inmates' propensity toward violence, the ongoing disputes between Plaintiff and inmates, and the need to properly restrain individuals moving to and from recreation.

65. Defendants were deliberately indifferent to the risk to Plaintiff's health and safety by failing to follow or establish effective policies, procedures and practices designed to protect inmates.

66. The deliberate indifference of the Defendants was the moving force behind the harm imposed upon Plaintiff.

WHEREFORE, Plaintiff, demands judgment in his favor against all Defendants for violating his rights under the Eighth Amended to the United States Constitution. Plaintiff seeks relief in the form of:

- Compensatory damages;
- Punitive damages to the extent authorized by law;
- Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT 2- VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT: DELIBERATE INDIFFERENCE TO THE NEED FOR MEDICAL CARE.**
**(Plaintiff v. PrimeCare, John Doe Corrections Officers, Jane Doe Nurses)**

67. Plaintiff incorporates herein by reference the above numbered averments as if set forth at length herein.

68. Defendants PrimeCare, John Doe Corrections Officers, and Jane Doe Nurses are "persons" within the meaning of 42 U.S.C. § 1983.

69. At all times relevant to this cause of action, Defendants PrimeCare, John Doe Corrections Officers, and Jane Doe Nurses acted under the color of state law within the meaning of 42 U.S.C § 1983.

70. On January 21, 2020, Plaintiff had a serious medical need.

71. Between January 21, 2020 and January 24, 2020, Defendants PrimeCare, John Doe Corrections Officers, and Jane Doe Nurses were deliberately indifferent to Plaintiff's need for medical attention.

72. Due to Plaintiff's visible pain and suffering, the Plaintiff's medical need was so obvious that a layperson would recognize the need for a doctor's attention.

73. Defendants' delay in providing medical care resulting in unnecessary and wanton infliction of pain upon Plaintiff.

74. The delay in providing medical care to Plaintiff was done for non-medical reasons.

75. Specifically, Defendants PrimeCare, John Doe Corrections Officers, and Jane Doe Nurses:

    a. Failed to provide a complete and timely evaluation by a physician despite obvious symptoms of a fracture and severe pain;

    b. Ignored Plaintiff's pleas for treatment; and

    c. Failed to establish and/or follow adequate policies, procedures, practices, or training for the proper medical evaluation, diagnosis, care, and treatment for the protection of Plaintiff.

76. Defendants' conduct was the proximate cause of Plaintiff's pain and suffering and long-term damage to his arm.

WHEREFORE, Plaintiff, demands judgment in his favor against all Defendants for violating his rights under the Eighth Amended to the United States Constitution. The Plaintiff seeks relief in the form of:

- Compensatory damages;
- Punitive damages to the extent authorized by law;
- Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

- Injunctive relief in the form of an order requiring Defendants Dauphin County and PrimeCare to enact and enforce policies to ensure prompt and effective medical care of inmates;

- Any other relief the Court deems just and necessary.

Respectfully submitted:

Date: January 20, 2022

*/s/  Robert J. Daniels*
Robert J. Daniels, Esquire
I.D. No.: 83376
KILLIAN & GEPHART, LLP
218 Pine Street
Harrisburg, PA 17101
(717)232-1851
rdaniels@killiangephart.com
*Attorney for Plaintiff*

## VERIFICATION

I verify that the facts set forth in this Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_____
Joel Lesher